IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EMPIRIAN HEALTH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:22cv639-MHT |
| | ) | (WO) |
| SPECIALTY RX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Plaintiff Empirian Health, LLC brings this lawsuit against Specialty RX, Inc., asserting claims for breach of contract, unjust enrichment, and declaratory relief. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 (diversity) and 1441 (removal).  This lawsuit is now before the court on Specialty RX's motion to dismiss or, in the alternative, to transfer venue.  For the reasons set forth below, the motion is denied.

I. FACTUAL BACKGROUND

Empirian is incorporated in Delaware and has its

principal place of business in Montgomery, Alabama.   It "negotiates and arranges manufacturer drug rebates for long-term care pharmacies."    Compl. (Doc. 7)   ¶ 10. Specialty RX, a pharmacy whose State of incorporation and principal place of business is New Jersey, retained Empirian's rebate administration services.    In March 2019, the parties entered a Prescription Administration Agreement, which had an initial term of 30 months and, absent a written objection, would automatically renew for another two-year term.   An exclusivity provision barred Specialty RX from submitting its rebate claims to any third-party providers during the lifespan of the agreement and for an additional six months upon its termination.

Two weeks after the agreement took effect, Specialty RX started sending rebate claims to Empirian at Empirian's principal place of business in Alabama. Specialty RX submitted claims roughly once a month.   At some point, the parties' relationship began to sour, and

2

in early 2021, Specialty RX emailed Empirian purporting
to terminate the agreement as of September 5.    Once
September 5 passed, Specialty RX ceased submitting its
claims to Empirian and retained the services of a
third-party provider.

Empirian filed suit in a state court in Montgomery,
Alabama, claiming that Specialty RX's obligations under
the agreement extended through the end of September and
that, in any event, Specialty RX was barred from using
third-party providers for six months following the
agreement's termination.    Besides breach-of-contract
damages, Empirian sought restitution on the theory that
it had overpaid Specialty RX on certain rebate claims and
that Specialty RX had failed to honor the agreement's
provisions governing reimbursements.    Finally, Empirian
requested a declaratory judgment that Specialty RX was
not entitled to any further rebate payments.

One month later, Specialty RX removed Empirian's
lawsuit to this court.    Specialty RX also sued Empirian

in federal court in New Jersey, "alleging, *inter alia*, breach of contract and conversion arising out of [Empirian's] failure to provide Specialty with its full share of its own rebate payments." Br. in Support of Mot. to Dismiss (Doc. 4) at 2. Empirian sought to transfer the New Jersey action to this federal court in Montgomery, Alabama. The motion has been held in abeyance pending this court's determination of whether the instant case should be dismissed or transferred. *See Specialty RX, Inc. v. Empirian Health, LLC*, No. 2:22-cv-6268-SDW (D.N.J. Aug. 8, 2023) (Espinosa, M.J.) (Doc. 19).


## II. MOTION TO DISMISS: LACK OF PERSONAL JURISDICTION

With its motion to dismiss, Specialty RX asserts that that this court lacks person jurisdiction over it. On a dismissal motion in which no evidentiary hearing is held, a plaintiff need establish only a prima-facie case of jurisdiction. *See Madara v. Hall*, 916 F.2d 1510, 1514

**4**

(11th Cir. 1990). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Id.* Where the parties' evidence conflicts, all evidence relating to jurisdictional facts is to be construed in the light most favorable to the plaintiff. *See Mutual Service Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 n.6 (11th Cir. 2004).

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that the exercise of personal jurisdiction over the defendant comports with certain fundamental requirements. First, the requirements of the forum State's long-arm provision must be met. Second, the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution must be met. *See Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 830 (11th Cir. 1992). In this case, the two are coextensive, as Alabama's long-arm provision extends to the limits of due process. Ala. R.

Civ. P. 4.2(b).

The due-process inquiry, in turn, has two requirements.  First, the defendant must have "certain minimum contacts" with the forum State and, second, the exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

a. Minimum Contacts

Personal jurisdiction is of two sorts: "specific" and "general."  Here, Empirian alleges only specific jurisdiction.  To constitute minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the applicable forum must be related to the plaintiff's cause of action or have given rise to it; involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and be such that the defendant should

reasonably anticipate being haled into court in the forum.  *See SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997).

This court concludes that Specialty RX has had sufficient minimum contacts with the State of Alabama to satisfy the constitutional standards for personal jurisdiction.  For more than two years, Specialty RX engaged in an ongoing relationship with an Alabama-based company by entering a contract with Empirian and submitting rebate claims on about a monthly basis.  These contacts were of no small consequence to Specialty RX, which amassed millions of dollars in rebate payments through its dealings with Empirian.

Specialty RX contends that its contacts with Alabama are constitutionally insignificant for three reasons. First, none of the conduct that Empirian claims put Specialty RX in breach of the agreement occurred in Alabama.  The breach-of-contract claim centers on Specialty RX's dealings with a third-party rebate

7

administration provider, which Specialty RX suggests is not Alabama-based.  Similarly, Empirian's restitution claim concerns rebate funds in Specialty RX's possession in New Jersey.  Specialty RX insists that, because the disputed conduct occurred outside of Alabama, its business dealings with Empirian cannot count as constitutionally relevant contacts.

Specialty RX's theory of personal jurisdiction is foreclosed by *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), which held that a contract could be the source of sufficient minimum contacts between a forum state and an out-of-state defendant.  Like the instant case, *Burger King* concerned out-of-state conduct that allegedly breached a contract.  The Supreme Court explained "that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  471 U.S. at 473 (quoting *Travelers Health*

*Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).  The same is true here.  Specialty RX entered a contract with an Alabama-based company and can be constitutionally held to answer in Alabama for failing to fulfill its contractual duties, even if its alleged misconduct occurred outside the State.

Second, Specialty RX insists that at no point during its dealings with Empirian did it avail itself of Alabama law.  The court disagrees.  "To determine whether there has been purposeful availment of a state's laws, the court ... inquires whether the defendant had a 'deliberate' or merely a 'fortuitous' contact with the state." *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1179 (11th Cir. 1985).  Specialty RX would be hard-pressed to argue that a contract between two sophisticated corporations that contemplated a long-term business relationship was merely "fortuitous."  On the contrary, Specialty RX's contacts with Alabama were sufficiently regular and long-lasting to constitute

purposeful availment.

Third and finally, Specialty RX asserts it could not have reasonably foreseen being haled into Alabama when Empirian was incorporated in Delaware, and the agreement contained a choice-of-law provision invoking Delaware law. Specialty RX casts itself as "a New Jersey corporation that contracted with a Delaware company ... to provide services *to the Defendant* (in New Jersey)." Br. in Support of Mot. to Dismiss (Doc. 4) at 7 (emphasis in original). But Specialty RX had ample notice that Empirian's principal place of business was in Alabama. The only address Empirian provided in the contract was in Montgomery, not Delaware. *See* Prescription Administration Agreement (Doc. 7-3) at 6; *see also id.* at 25. Indeed, when Specialty RX wished to renegotiate certain provisions of the agreement, it sent a letter to Empirian's Montgomery address. *See* Compl. (Doc. 7) ¶ 5. After years of transacting business with an Alabama-based company and profiting millions from the

exchange, Specialty RX cannot now claim to be blindsided that a dispute under the Agreement might be litigated in Alabama.

In sum, the court finds that Specialty RX intentionally forged an ongoing relationship with an Alabama-based business and engaged with Empirian on about a monthly basis.  The minimum contacts test is satisfied.

### b. Fair Play and Substantial Justice

In evaluating whether the exercise of jurisdiction comports with fair play and substantial justice, the court must consider such factors as the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.  *See Burger King*, 471 U.S. at 477.

11

Specialty RX submits that forcing it to defend the suit in Alabama violates basic principles of fairness when it "merely sat at home in New Jersey and allowed Empirian to process and collect [its] rebate claims and payments." Reply (Doc. 25) at 7. However it conceives of its relationship with Empirian, Specialty RX fails to articulate why it would be fundamentally unfair or inconvenient to have a corporate defendant defend a lawsuit where the contract it entered was performed. The burden on Specialty RX in defending the suit in Alabama is slight, especially given modern modes of transportation. Moreover, Alabama has a substantial interest in ensuring that companies that conduct business within its borders have a convenient means of vindicating their contractual rights. Nor is there anything in the record to suggest that haling Specialty RX into Alabama undermines the interstate judicial system's interest in efficiency. The court can therefore constitutionally exercise personal jurisdiction over Specialty RX.

### III. MOTION TO DISMISS: IMPROPER VENUE

Specialty RX asserts that Empirian's complaint should be dismissed for improper venue under 28 U.S.C. § 1391(b). *See* Br. in Support of Mot. to Dismiss (Doc. 4) at 8. But the general venue statute does not apply to removed actions: "once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds." *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001). Because Specialty RX removed this lawsuit to federal court, the court denies the motion to dismiss to the extent it asserts improper venue.

### IV. MOTION TO TRANSFER VENUE

Specialty RX next argues that the case should be transferred to the U.S. District Court for the District of New Jersey, where Specialty RX has a similar lawsuit pending against Empirian. Specialty RX invokes 28 U.S.C.

13

§ 1404(a), which authorizes a district court to transfer a civil action to any other district in which it might have been brought "for the convenience of parties and witnesses, in the interest of justice."

"Because federal courts normally afford deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice." *Carroll v. Texas Instruments, Inc.*, 910 F. Supp. 2d 1331, 1333 (M.D. Ala. 2012) (Thompson, J.). "A district court has broad discretion in weighing the conflicting arguments as to venue, but must engage in an individualized, case by case consideration of convenience and fairness." *Id.* (quotation marks and citations omitted).

"In resolving a § 1404(a) motion, the court first determines whether the action could have originally been brought in the proposed district of transfer," and, "if so, the court then weighs the convenience of the parties

**14**

and considers interests of justice to determine whether a transfer is appropriate." *Id.*

Empirian does not dispute that this case could originally have been brought in the District of New Jersey. "Accordingly, the court's inquiry focuses solely on whether the balance of justice and convenience favors transfer. In making this determination, courts generally consider a number of non-exhaustive factors, including the following: the plaintiff's initial choice of forum; the convenience of the parties; the relative means of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency." *Id.*

The court will first examine whether these factors militate in favor of transfer before discussing the extent to which the pendency of Specialty RX's New Jersey action should influence the § 1404(a) analysis.

15

a. The § 1404 Factors

*Plaintiff's Choice of Forum*.   Empirian's principal place of business is in the forum originally chosen for this litigation: the state court in Montgomery, Alabama. Empirian's choice of forum in its home State should receive considerable weight and "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)).[1]

*Convenience of the Parties*.   "When evaluating the relative convenience of the parties, [t]ransfer should be denied if it would merely shift inconvenience from one party to another."   *Carroll*, 910 F. Supp. 2d at 1334 (quoting *Kolodziej v. Mason*, No. 1:10-cv-2012-JEC, 2011 WL 2009467, at *8 (N.D. Ga. May 20, 2011) (Carnes, C.J.)).

_____

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Specialty RX asserts that, because it is "a New Jersey corporation" and Empirian is a "Delaware company," litigating this dispute in Alabama would be inconvenient for the parties. Br. in Support of Mot. to Dismiss (Doc. 4) at 12. But a corporate party's state of incorporation does not necessarily reflect where it conducts business, much less where it can conveniently litigate a dispute. Nothing in the record suggests that Empirian has any presence in Delaware that would allay the inconvenience of litigating this lawsuit in the District of New Jersey. Granting Specialty RX's motion would only shift the burden of litigating out-of-state to Empirian. Because Specialty RX has not claimed that retaining this action in Alabama would pose any special inconvenience, the court finds this factor is neutral.

*Relative Means of the Parties*. Specialty RX insists that Empirian, in providing services to pharmacies nationwide, "is more accustomed, and able, to litigate its claims outside of its 'home state.'" Br. in Support

17

of Mot. to Dismiss (Doc. 4) at 13.  But taking Empirian's
allegations as true, which the court must on a motion to
dismiss, Empirian conducts its business in Alabama, not
where its clients are located.  *See* Compl. (Doc. 7) ¶ 6.
Receiving and processing rebate claims in Alabama from
companies across the country does not necessarily mean
that Empirian is better-positioned financially to
litigate this matter outside its home State.  Both
parties are sophisticated corporations, and the record
presents no reason to doubt that either one could fund
out-of-state travel as needed.  The court finds this
factor is neutral.

*Convenience of the Witnesses*.  A court cannot
evaluate which forum will be more convenient for the
witness without knowing who the witnesses might be, what
knowledge they have about the litigation, and where those
witnesses are located.  "If the moving party merely has
made a general allegation that necessary witnesses are
located in the transferee forum, without identifying them

18

and providing sufficient information to permit the
district court to determine what and how important their
testimony will be, the motion to transfer should be
denied." 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.
2023).

Specialty RX does not name a single witness in its
motion. It alludes to a third-party rebate services
provider--which, like Specialty RX, is not
Alabama-based--but conclusory assertions that one forum
will be more convenient for an unnamed witness cannot
sustain Specialty RX's burden. This factor is therefore
neutral.

*Access to Sources of Proof*. Specialty RX's assertion
that the District of New Jersey offers superior access
to evidence suffers precisely the same defect. It is the
movant's burden to "establish the location of the
[sources of proof], their importance to the resolution
of the case, and the inability to move or copy them
easily." 15 Fed. Prac. & Proc. Juris. § 3853 (4th ed.

19

2023)).   Again, Specialty RX does not identify any
documents or records that would be more accessible in New
Jersey.   Instead, it assumes that, because Empirian's
complaint takes issue with business decisions Specialty
RX made from its corporate headquarters, "the facts and
documents relevant to the subject litigation" will be
"located in the District of New Jersey."  Br. in Support
of Mot. to Dismiss (Doc. 4) at 13.

Specialty RX may be right, or it may not be.   The
court cannot know without a better understanding of what
evidence is most germane to the litigation and where that
evidence is located.  A bare allegation that the District
of New Jersey offers better access to sources of proof
falls far short of satisfying Specialty RX's burden.
This factor, too, is neutral at best.

*Locus of Operative Facts*.  "In determining the locus
of operative facts, the court must look at 'the site of
the events from which the claim arises.'"  *Nat'l Tr. Ins.
v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp.

**20**

3d 1236, 1245 (M.D. Fla. 2016) (Howard, J.) (quoting *Charter Oak Fire Ins. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 220 (D. Conn. 2003) (Hall, J.)). "When there are multiple loci of operative facts and no single locus is primary in this respect, courts treat this factor neutral in the Section 1404(a) analysis." *Combs,* 461 F. Supp. 3d at 1211-12.

In this case, New Jersey and Alabama are both loci of operative facts. On the one hand, the agreement was performed mostly in Alabama, where Empirian processed Specialty RX's rebate claims, and Empirian's declaratory judgment claim concerns funds currently in Empirian's possession. Conversely, the conduct that allegedly breached the agreement occurred in New Jersey, and Empirian's restitution claim seeks funds in Specialty's possession there.

The court finds that the "locus of operative facts" factor is either neutral (insofar as it involves multiple loci) or weighs in Specialty RX's favor, as the gravamen

21

of Empirian's complaint addresses Specialty RX's dealings with a third-party provider. But to the extent this factor favors Specialty RX, it does so "only slightly." *See Carroll*, 910 F. Supp. 2d at 1341 (quoting *Fedonczak v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-cv-61-MEF, 2010 WL 1856080, at *4 (M.D. Ala. May 4, 2010) (Fuller, J.)).

*Interests of Justice*. Claiming that the "interests of justice" weigh in its favor, Specialty RX relies on many of the same arguments it advanced for why the court lacks personal jurisdiction: that the alleged breach of the agreement occurred in New Jersey; that Specialty RX lacks sufficient ties to Alabama; and that forcing Specialty RX to litigate this action in Alabama would be unfair. For the reasons already discussed, the court is unmoved. Nor does the record furnish any other basis to believe that the interests of justice would be disserved by this court retaining the case. The court finds that this final factor is also neutral.

Having considered the § 1404(a) factors,[2] the court cannot conclude that the case should be transferred to the District of New Jersey. The court cannot identify any factor that counsels strongly enough in favor of transfer to overcome the deference given to Empirian's choice of forum.

**b. Specialty RX's New Jersey Action**

Specialty RX maintains that no deference is owed to Empirian's choice of forum for two reasons: first, Specialty RX already has a similar lawsuit pending against Empirian in New Jersey; and, second, Specialty RX contends that Empirian filed the instant action in a strategic attempt to avoid out-of-state litigation.

Generally, "[w]here two actions involving overlapping issues and parties are pending in two federal

_____

2. Neither party discusses the availability of compulsory process or the alternative forum's familiarity with the governing law. The court is left to conclude that these factors do not support transfer.

courts, there is a strong presumption ... that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). Applying the first-filed rule here would favor Empirian, which filed its complaint in Alabama one month before Specialty RX initiated litigation in the District of New Jersey. The actions pending in Alabama and New Jersey both pertain to rebate funds that Specialty RX believes are withheld in violation of the agreement and that Empirian says are not owed due to Specialty RX's alleged breach. Although the claims may not be identical, there is enough of a "substantial overlap" for the first-filed case to take priority. *See Marietta Drapery & Window Coverings Co. v. N. River Ins. Co.*, 486 F. Supp. 2d 1366, 1370 (N.D. Ga. 2007) (Story, J.).

The first-filed rule has an "anticipatory suit exception," which "applies when one party, on notice of a potential lawsuit, files a declaratory judgment action

in its home forum." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 79 (11th Cir. 2013).  The party that filed first must have done so "upon receipt of specific, concrete indications that a suit by the defendant [was] imminent."  1 Cyc. of Federal Proc. § 2:175 (3d ed. 2023) (quoting *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1383 (S.D. Cal. 2014) (Battaglia, J.)).  In other words, the exception is triggered when a party attempts to preempt an impending lawsuit by asking a court to declare that the disputed conduct was lawful, thereby anchoring the litigation in that party's forum of choice.  *See Collegiate Licensing*, 713 F.3d at 79.

Specialty RX asserts this exception applies because Empirian allegedly filed this lawsuit after Specialty RX insinuated that it had "learned disquieting information about the inaccuracy of [Empirian's] rebate payments" and gave Empirian six days to respond to a settlement offer. Reply (Doc. 25) at 12.  The instant suit was filed six

days later.   In its complaint, Empirian seeks a
"declaratory judgment" that Specialty RX is not entitled
to any further rebate payments, which appears to
anticipate a lawsuit by Specialty RX for the purportedly
withheld funds.

The issue is a close one.   On the one hand, the
timing of Empirian's lawsuit and the inclusion of the
declaratory judgment request are suspicious.   Specialty
RX's allegations suggest that Empirian may have filed the
complaint when it did in an attempt to forum shop.   On
the other hand, Empirian is not merely filing a defensive
declaratory-judgment action but rather asserting its own
rights under the Agreement to breach-of-contract damages
and restitution.

Considering the record as a whole, Specialty's
allegations of gamesmanship are not convincing enough to
upend the court's analysis of the § 1404(a) factors,
almost none of which favor transfer.   Even if the court
credits Specialty RX's contentions, the anticipatory suit

26

exception is not "an obligatory rule mandating dismissal." *Manuel*, 430 F.3d at 1135. Specialty would still need to demonstrate a sufficiently compelling reason to transfer this case to the District of New Jersey. As this court has noted several times now, Specialty RX has failed to carry that burden.

***

Accordingly, it is ORDERED that defendant Specialty RX, Inc.'s motion to dismiss or, in the alternative, transfer venue to the District of New Jersey (Doc. 3) is denied.

DONE, this the 14th day of November, 2023.

> /s/ Myron H. Thompson
> UNITED STATES DISTRICT JUDGE

27